United States District Court
District of Massachusetts

No. 05-CV-10642 WGY

Steven Dearborn Pro Se,
  Plaintiff,

v.

Commissioner of Corrections,
Barnstable County Commissioners,
Barnstable County Sheriff,
Barnstable County House of
Corrections Superintendent,
  Defendants,

Plaintiff, Steven Dearborn's Pro Se Motion of Opposition to Barnstable County Defendants, et al, and Commissioner of Corrections Motions for Summary Judgment.

Now comes the Plaintiff and moves this Honorable Court pursuant to Rule 56 of the Federal Rules of Civil Procedure to deny the Defendants Motion for Summary Judgment in favor of the Plaintiff.

INTRODUCTION

Plaintiff, Steven Dearborn, filed a Motion for Summary Judgment on May 18, 2005. Plaintiff's Motion was entered into the docket on May 23,

(1 of 17)

2005 BY THE COURT.

Plaintiff also filed a <u>MOTION FOR A PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER</u> which was also entered into the docket on <u>MAY 23, 2005</u> and awaits the courts decision.

The defendants in this case; Barnstable County (et al) and the Commissioner of Corrections, have filed <u>cross-motions for summary judgment</u> and in opposition to Plaintiff motions, supra, all of which, also await the courts decision.

<u>PLAINTIFFS' CROSS-MOTION OF OPPOSITION AND FACTS IN SUPPORT OF SUCH, INFRA.</u>

1) Plaintiff states that certain alleged "facts" by the Barnstable County defendants are arguable and denied by Plaintiff as true facts. However, Plaintiff contends that even if the allegations had merit, those issues are irrelevant.

2) The Barnstable County defendants, in their cross-motion for summary judgment, attempt to use the alleged past acts by Plaintiff, and of several cited cases, as a means to support their policy of handcuffing inmates while showering and requiring "full restraint" status when out of their cells for their (required) "one hour of exercise."

(2 of 17)

<u>MEMO OF LAW I</u>

3) <u>TITLE 103 CODE OF MASSACHUSETTS REGULATIONS (CMR) 926.04 (COUNTY FACILITIES)</u>: PROGRAM AND SERVICES FOR INMATES IN SEGREGATION UNITS - (5) STATES...... THAT INMATES "RECIEVE A MINIMUM OF ONE HOUR A DAY, FIVE DAYS A WEEK, OF EXERCISE OUTSIDE THEIR CELLS, UNLESS SECURITY OR SAFETY CONSIDERATIONS DICTATE OTHERWISE. WHEN WEATHER PERMITS, this shall include OUTSIDE EXERCISE."

<u>FACT</u>

4) BARNSTABLE COUNTY HOUSE OF CORRECTION DEVELOPED A BLANKET-POLICY <u>YEARS AGO</u>, which REQUIRES THAT <u>ALL</u> INMATES IN THEIR DISIPLINARY UNITS SHOWER WHILE HANDCUFFED AND COME OUT OF THEIR CELLS FOR EXERCISE IN "FULL-RESTRAINTS" (HANDCUFFED AND LEG-RESTRAINTS) which DEPRIVES <u>ALL</u> INMATES IN THEIR DISIPLINARY UNITS, OF "ONE HOUR EXERCISE" REGARDLESS OF ANY INDIVIDUAL INMATES DISIPLINARY OFFENSE. <u>ALL</u> INMATES IN DISIPLINARY SEGREGATION ARE ALSO REQUIRED TO SHOWER IN HANDCUFFS, NO EXCEPTIONS.

5) DEFENDANTS POLICY, SUPRA, OFFERS NO PROCEDURAL DUE PROCESS IN THEIR FULL-RESTRAINT POLICY OR IN THEIR HANDCUFF-WHILE-SHOWERING-POLICY. THERE ARE NO DISTINCTIONS MADE IN DETERMINING ONES STATUS.

6) BARNSTABLE COUNTY DEFENDANTS ADMIT THESE FACTS IN THEIR RESPONSE TO PLAINTIFFS GRIEVANCE (EXHIBIT B).

(3 OF 17)

Plaintiffs acts or behavior in the allegations mentioned in their cross-motion, for Rule 56, did not create Defendants policy. Defendants created a Blanket-Policy, years ago, at the former House of Correction in Barnstable, Massachusetts, where inmates, in the former Segregation Unit ("Unit C"), (see Exhibit C-10) were also required to shower while handcuffed, and exercise in "Full-Restraints."

7) Plaintiff states that this Blanket-Policy clearly deprives inmates, including Plaintiff, of a human need, e.g., exercise and free movement to wash one's body.

8) Plaintiff states that no security or safety determination was made in Plaintiffs case, as the Defendants attempt to suggest in their cross-motion for summary judgment. Such considerations are not necessary in a Blanket Policy.

9) Plaintiff states that it is <u>well known</u> that the Defendants have been practicing this Blanket-Policy for years. Many inmates were subjected to such policy "for years" at the former HOC.

10) Plaintiff states that it was this action of his that encouraged the Defendants to discontinue the policy, as they now allege, to have done.

(4 of 17)

11) Barnstable County Defendants have suggested that Plaintiff is a threat to staff and inmates as well. They've stated this to persuade this court, that Plaintiff is a security risk. (Defendants Rule 56 Motion)

12) Plaintiff states that aside from the fact that Defendants policy is a Blanket-Policy, if the staff truly believed this allegation, then the correctional officers working that unit would not have let Plaintiff out of his cell at night without handcuffs, or leg-restraints, to clean the shower and the floors in such unit (POD-F).

13) Plaintiff states that if he is considered a threat to staff by the Defendants in Barnstable County then Plaintiff would not have remained in general population, where for the past six months, he has not been a problem, whatsoever. Plaintiff attends education, programs and works a detail daily. Plaintiff is not incorrigible.

14) Defendants in their cross-motion for summary judgment (page 6) state that "The Federal courts have repeatedly held that requiring an inmate to shower while handcuffed is not a violation of the inmates Eighth Amendment Rights."

15) Defendants have cited four cases in support of ~~(Failure)~~ their statement mentioned, supra. In

(5 of 17)

## ARGUMENT

THE FIRST ONE, RISDAL V. MARTIN (US DIST. 1993) 810 F. SUPP. 1049, DEFENDANTS STATE "FORCIBLY SHOWERING INMATE IN RESTRAINTS, NOT A VIOLATION OF EIGHTH AMENDMENT"

16) PLAINTIFF STATES THAT RISDAL WAS NOT REQUIRED TO SHOWER IN HANDCUFFS, NOR DOES IT STATE SUCH IN THAT CASE. RISDAL WAS "FORCED TO TAKE A SHOWER" BUT NOT IN HANDCUFFS. HE WAS REFUSING TO SHOWER FOR DAYS, SO THE AUTHORITIES FORCED HIM TO TAKE A SHOWER. THEY HANDCUFFED HIM AND ONCE HE WAS PLACED INSIDE THE SHOWER STALL, HE WAS REQUIRED TO PUT HIS HANDS THROUGH THE "FOOD SLOT" ON THE DOOR TO THE SHOWER AND WAS THEN UNCUFFED "IN ORDER TO SHOWER."

17) PLAINTIFF STATES THAT THE SEGREGATION UNIT IN BARNSTABLE COUNTY HOC HAS A SIMILAR SHOWER DOOR WITH A BUILT IN "SLOT" TO PUT ONES HANDS THROUGH TO BE UNCUFFED. DESPITE THIS, PLAINTIFF, AS WELL AS ALL INMATES, WERE STILL REQUIRED TO SHOWER IN HANDCUFFS.

18) THE SECOND CASE, LYONS V. NELSON 1995 U.S. DIST. LEXIS 9630 (D. KAN 1995) HERE, THE DEFENDANTS STATE THAT LYONS "COMPLAINT THAT IT IS DEHUMANIZING

(6 OF 17)

TO BE TAKEN TO SHOWERS IN HANDCUFFS DOES NOT INVOLVE THE WANTON AND UNNECESSARY INFLICTION OF PAIN AND IS THEREFORE NOT A VIOLATION OF THE PLAINTIFFS [Lyons'] EIGHTH AMENDMENT RIGHTS"

19) PLAINTIFF STATES THAT IN <u>LYONS v. NELSON</u>, <u>Lyons</u> ISN'T COMPLAINING ABOUT BEING REQUIRED TO shower (IN HANDCUFFS) HE'S COMPLAINING THAT, AS A PATIENT IN A TREATMENT CENTER, HE shouldn't have to BE TAKEN TO THE shower in handcuffs, OR TO THE HOSPITAL in handcuffs. <u>Lyons'</u> CASE ISN'T COMPARATIVE TO PLAINTIFFS COMPLAINT OF BEING REQUIRED TO shower <u>in</u> handcuffs AND EXERCISE <u>IN</u> FULL-RESTRAINTS.

20) IN THE <u>THIRD CASE</u>, <u>BRANHAM v. MEACHUM 77 F. 3d 626, 631 (2d CIR. 1996)</u>, THE DEFENDANTS CLAIM THAT "FORCING [BRANHAM] TO WEAR LEG-IRONS AND HANDCUFFS while showering DOES NOT VIOLATE HIS EIGHTH AMENDMENT RIGHTS"

21) PLAINTIFF STATES THAT IN <u>BRANHAM v. MEACHUM</u>, <u>BRANHAM</u>, WAS <u>NOT</u> FORCED TO SHOWER WITH HAND-CUFFS ON EITHER. HE WAS REQUIRED TO WEAR LEG-IRONS BUT WAS NOT HANDCUFFED, NOR DOES IT EVEN

(7 OF 17)

STATE THAT HE WAS IN SUCH.

22) IN THE FOURTH CASE, LEMAIRE V. MAASS 12 F.3d 1444, 1457 (9TH CIR. 1993) BARNSTABLE County DEFENDANTS STATE THAT "NO EIGHTH AMENDMENT VIOLATION where PRISONERS WERE REQUIRED TO SHOWER [while] IN HANDCUFFS AND [LEG-IRONS] SHACKLES".

23) PLAINTIFF STATES THAT IN LEMAIRE V. MAASS, LEMAIRE FORCED THE AUTHORITIES TO PUT HIM IN A SHOWER WITH HANDCUFFS. THE DISTRICT COURT (U.S. DIST.) FOUND THAT FORCING LEMAIRE TO SHOWER WAS A VIOLATION OF HIS EIGHTH AMENDMENT RIGHTS AND FURTHER GRANTED AN INJUNCTION PROHIBITING THE OFFICIALS FROM HANDCUFFING him while SHOWERING. MOST importantly, AT THE TIME LEMAIRES' COMPLAINT WAS FILED IN COURT, THERE WAS NO DOOR ON THE SHOWER IN HIS UNIT. (Unlike Plaintiffs) (SITUATION)

24) LATER ON APPEAL, THE 9TH CIRCUIT REVERSED THE DISTRICT COURTS RULING AFTER HEARING GRUESOME DETAILS ABOUT HOW THIS LEMAIRE, A PRISONER SERVING A life SENTENCE FOR "SLITTING HIS VICTIMS THROAT" who STABBED ANOTHER INMATE "12 TO 14 TIMES" AS WELL AS "SLICING AN OFFICERS NECK" WITH A HOMEMADE

(8 OF 17)

KNIFE. THIS IS A PRISONER IN A STATE PENITENTIARY WHO OPENLY ADMITS: "I'LL GET SGT. DAHL, I DON'T CARE HOW MUCH TIME THEY'LL GIVE ME, I'm DOING LIFE ANYWAY."

25) THE COURT (9TH CIR.) IN <u>LEMAIRE V. MAASS</u>, DESCRIBE <u>LEMAIRE</u> AS AN "INCORRIGIBLE" PRISONER "WHO IS MURDEROUS, DANGEROUS, UNCIVILIZED AND UNSANITARY." UNSANITARY, BECAUSE HE WAS "DUMPING FECES" AND OTHER THINGS OVER OFFICERS HEADS IN THAT (PENITENTIARY) DISIPLINARY UNIT.

26) PLAINTIFF STATES THAT HE IS SERVING ONLY MONTHS IN A <u>HOUSE OF CORRECTION</u> WHERE THE AVERAGE STAY IS 7 TO 9 MONTHS FOR SMALLER CRIMES, BY FAR, THAN OF THOSE DESCRIBED IN THE CASES DEFENDANTS' (~~STATE~~) CITED.

27) PLAINTIFF STATES THAT, WITHOUT GETTING INTO UNNECESSARY DETAIL, HE WAS INVOLVED IN A DISPUTE OVER AN ADDRESS BOOKLET WHICH WAS TAKEN FROM HIM AND CONSIDERED CONTRABAND. THE DISPUTE ELEVATED WHEN PLAINTIFF REQUESTED A GRIEVANCE FORM;

things were said, Plaintiff admits that he used threatening language as he was being pounced on, unnecessarily, but NO officers were bit or punched, nor does the report in the incident claim so. Since that incident, Plaintiff has been trouble free, attending education classes, substance abuse meetings and works a detail, daily, for the past six months and is no threat whatsoever at this (institution) House of Correction. Plaintiff is not, in anyway, a security risk.

28) Plaintiff states that all the negative claims and allegations by Barnstable County Defendants are denied by Plaintiff and in the four cases cited by Defendants, there are no comparative issues associated with Plaintiff one-time loss of temper, here at this facility.

29) Furthermore, In Risdal v. Martin the state penitentiary where Risdal is incarcerated in Iowa houses 220 of the "most unruly and incorrigible inmates" in the entire Iowa Penal System; yet even so, these inmates are not

(10 of 17)

REQUIRED TO SHOWER while handcuffed. <u>Risdol's</u> HANDCUFFS WERE REMOVED ONCE IN THE SHOWER STALL. THE COURT BASED A DECISION ON OTHER CONDITIONS COMPLAINTANT CLAIMED.

30) PLAINTIFF SUGGESTS TO THIS COURT THAT INASMUCH AS SUMMARY JUDGMENT, "OTHER COURTS HAVE CONCLUDED AND WE AGREE THAT WHETHER PRISON CONDITIONS ARE SUFFICIENTLY HARMFUL ENOUGH TO ESTABLISH AN EIGHTH AMENDMENT VIOLATION IS PURELY LEGAL DETERMINATION FOR THE COURT TO MAKE" (SEE HICKEY V. REEDER, 12 F. 3d 754, 756, (8TH CIR. 1993) CITING <u>HUDSON V. McMILLIAN, 503 U.S. 1, 6, 117 L. Ed.</u>

31) PLAINTIFF STATES THAT IF SUCH CLAIM OF AN EIGHTH AMENDMENT VIOLATION IS "PURELY A LEGAL DETERMINATION" AS STATED, SUPRA, BY THE <u>8TH CIRCUIT COURT,</u> THEN QUOTING, <u>BELL LUMBER + POLE Co. V. U.S. FIRE INS. Co. (1995 CA 8 MINN.) 60 HOUSING AUTH. (1997 CA8 MO.) 114 F. 3d 696.,</u> "WHERE UNRESOLVED ISSUES ARE PRIMARILY LEGAL MATTER RATHER THAN FACTUAL, SUMMARY JUDGMENT IS PARTICULARLY APPROPRIATE."

(11 OF 17)

32) Plaintiff (PF) states, that if it is totally up to the court to decide what constitutes an Eighth Amendment violation, then Plaintiff asks the question; what constitutes whether or not showering inmates in handcuffs, without even the benefit of an individualized determination, made by a classification process, to make such determinations, and with the contemporary standards of decency in mind, violates the cruel and unusual punishment clause of the 8th Amendment? Is it cruel to deprive an inmate, serving short time, to be able to shower properly or exercise without being subjected to an impartial "Blanket Policy" requiring Full-Restraints while exercise is due?

33) Plaintiff states that the Defendants Blanket-Policy of showering inmates while handcuffed, and exercising them in Full-Restraint status, is merely a policy created to relinquish the Barnstable County Defendants of making case-by-case classifications to determine such decisions. Therefore, simply making their jobs easier at the expense of low level county inmates.

(12 of 17)

34) Plaintiff states that if the courts find this Policy acceptable in Houses of Correction, where rehabilitation is strongly needed, more than further punishment, after convictions of otherwise small crimes, than the court throws such Blanket-Policy, without any due process, out to all classes of otherwise (Non-)violent criminals, or what have you.

35) Plaintiff states that this Policy of Defendants has been quietly kept and practiced for too long now and needs intervention by the court so that Defendants "Discretionary Powers" don't cross the line into civil rights violations v. security (labels). This Policy is not practiced in any of the Houses of Corrections in Massachusetts and needs to be prohibited by the courts or these Defendants will continue such practices after given the "Green light" by the court to "Go ahead."

36) Defendants have abused their discretionary powers simply to make their jobs easier. This "culpable state of mind" of decision making is very questionable and deserves attention.

37) Defendants deprived Plaintiff of one of life's liberties; exercise, free ward movement to shower, and deprived Plaintiff of due process. In HEWITT v. HELMS 459 US 460 74-7 L. Ed. 2d

(13 of 17)

675, 103 S. Ct. 864 (1983) the court held that "prison regulations could give rise to liberty interests if the language of the regulation contained mandatory language that an incursion of liberty would not occur absent substantive predicates Id. at 471-72." It goes on to say that in Sandin v. Conner 515 U.S. 472, 132 L. Ed. Sandin refocused the inquiry on the "nature" of the deprivation at issue, 515 U.S. at 483-84. The court held that "a state could not create a liberty interest unless the right provided freedom from restraint that imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

38) Plaintiff reasserts that the Defendants in this case have deprived him of a liberty of interest to be free to exercise for one hour as required in Mass. Regulations, mentioned supra, and that forcing him to shower while handcuffed inasmuch as their policy requires, "imposes atypical and significant hardship" on the Plaintiff.

39) Plaintiff states that Defendants policy has inflicted unnecessary pain in his wrists while

(14 of 17)

trying to wash body parts and was not even necessary in such a low-level setting such as a "House of Correction" where inmates can be subjects to defendants policy for merely refusing an order or as little as arguing loudly. The classifications of inmates at this House of Correction do not even begin to resemble those such as <u>Lemaire</u>. In <u>Lemaire's</u> situation, he left the authorities no choice but to treat him the way he complains of.

40) Plaintiff states that defendants policy of handcuffing inmates while showering and requiring full-restraints for their one hour of exercise is an "across the board (policy) policy rather than an individual decision regarding the use of restraints; indeed the nature of a blanket policy is such that it removes the need for decision-making on a case-by-case basis". "Policy does not have a rational basis for drawing distinctions with the regard to the use of

RESTRAINTS." E.G. THIELMAN v. LEEAN 282 F. 3d 478 (MARCH 4, 2002)

41) Plaintiff states that the Policy of Defendants has a liberty interest which Defendants created and inasmuch as so, have violated Plaintiffs Rights under the Eighth Amendment, Fourteenth Amendment and under 42 U.S.C.S. § 1983 of the U.S. Constitution and Federal and States to which entitles Plaintiff relief.

42) Plaintiff states that when Defendants created their Blanket-Policy regarding restraints in their Disiplinary units, "that their state of mind" was to make their jobs easier requiring no Process in such Policy. Their Policy deprives Plaintiff of a "Human Need" and such Policy making by officials show that they acted with "Persistent malicious cruelty," and Defendants act with "Deliberate indifference" to such Human Needs and

(16 of 17)

to the safety of the Plaintiff and all inmates in disiplinary segregation. (See <u>Wilson v. Seiter</u> 115 L. Ed. 2d 271, 111 S. Ct. 2321 (1991) and <u>Hudson v. McMillian</u> 117 L. Ed 2d 156, 112 S. Ct. 995 (1992) <u>Johnson v. Glick</u> 481 F. 2d 1028, 1033 (CA2).

Therefore, in accordance with the requirements of Rule 56 of the Federal Rules of Civil Procedure, Defendants motion for Summary Judgment should be denied in favor of Plaintiff.

Respectfully Submitted,

Steven Dearborn (Pro Se)
6000 Sheriffs Place
Bourne, MA 02532

Dated: June 23, 2005

(17 of 17)