United States District Court
District of Massachusetts

No. 05-CV-10642-WGY

Steven Dearborn, Pro Se,
Plaintiff,

V.

Commissioner of Corrections et al,
Defendants.

Plaintiff's Motion to Appeal from U.S. District Courts Denial of Preliminary Injunction - Temporary Restraining Order

Now comes the Plaintiff pursuant to 28 U.S.C.S. § 1292(A)(1) and moves this honorable Court to direct Plaintiffs appeal to the Court of Appeals for review of the District Courts decision to deny Plaintiffs Motion for Preliminary Injunction - Temporary Restraining Order. Plaintiff relies on the following brief in support of such.

<u>Plaintiffs Brief in Support</u>

<u>of Appeal</u>

Plaintiff filed a motion requesting that the District Court grant an order for a <u>Temporary Restraining Order - Preliminary Injunction</u> ordering the Barnstable County Defendants to refrain from certain practices involving the use of restraints at the Barnstable County House of Corrections Disciplinary Units (B.C.H.O.C). (See enclosed <u>Motion Rule 65</u>).

On June 10, 2005, the Honorable Judge William G. Young denied such motion as being "moot" (order enclosed).

Due to plaintiffs lack of skills to litigate properly, and because of his limited access to photocopying and legal supplies, plaintiff has been experiencing some difficulties meeting time limits and other legal requirements. For this, plaintiff apologizes to the court for any inconvenience. (It is not in plaintiffs control).

Plaintiff has managed to submit <u>Motions for Summary Judgment and to Amend Complaint</u>

which presently await the District Courts decision. The Barnstable County Defendants, as well as the Commissioner of Corrections, have since opposed such motions and have submitted cross-motions for same, summary judgment. These also await the courts decision. (See enclosed docket sheet for reference).

Plaintiff states that inasmuch as his preliminary Injunction Motion (see enclosed); Plaintiff has raised relative issues in regard to the Barnstable County Defendants Policies of the use of restraints in their Disiplinary Segregation Units.

Defendants have stated that because Plaintiff is no longer being held in such Disiplinary Units, that his motion for Preliminary Injunction has become "moot".

Defendants have claimed that the reason why Plaintiff was being handcuffed during his shower, for (30) days, was because the "wrong lock" was on the shower door.

Defendants state that now that a different lock has been installed (since Plaintiff filed this action); that Plaintiffs claims are further "moot".

Defendants have alleged also, that due to past acts, or behavior, of Plaintiff, that there was a determination made, which suggested that Plaintiff needed to be placed in restraints during certain activities; suggesting that he is a security risk. Plaintiff emphatically denies these allegations.

Defendants (BCHOC) admit in "Exhibit B" (enclosed) that during the (30) days confined in Disciplinary Segregation, Plaintiff was required to shower, and exercise, in restraints, "per our Policy".

Plaintiff states, because there is a specially designed hole ("slot") on such shower door, so that the inmate, (Plaintiff), could put his hands through such door, to be uncuffed, in order to shower; that handcuffs were unnecessary.

Plaintiff states that this shower stall is unequivocally secure and could not be unlocked

by plaintiff, or anyone else, from inside shower.

Plaintiff states that defendants true reason for showering plaintiff, as well as all inmates, in such units, while handcuffed, and exercising them in "full-restraints" (handcuffed and wearing leg-restraints), is due to a "Blanket-Policy" which has been active for many years.

Defendants restraint policy is an "Across-the-Board-Policy" which requires <u>all</u> inmates to shower while handcuffed, and while out of their cells, for a one-hour a day exercise period, <u>all</u> such inmates are required by such policy, to be in full-restraints. There are <u>no</u> exceptions.

Defendants claim, that plaintiff is a "security risk", is therefore, "moot" because an individual determination is not made in any case, as to the use of restraints in such disciplinary units. <u>All</u> inmates are treated the same way and there are no exceptions to this "across-the-board" policy (see enclosed

EXHIBITS C-1 THROUGH C-10).

All inmates who were incarcerated at the FORMER Barnstable HOC, before it was closed down, on October 1, 2004, while in "Unit-C", (THE FORMER SEGREGATION UNIT), were also required to shower and exercise in restraints.

Defendants' "ACROSS-THE-BOARD Policy" was carried over to the NEW Barnstable HOC where such policy stayed active until plaintiff began petitioning the court (see enclosed EXHIBIT C-10).

It is a well-known fact amongst the entire inmate population, presently, that this policy has been active "FOR YEARS," as it was during plaintiffs (30) days in segregation at the NEW Barnstable County HOC (opened on October 1, 2004), which is NOT practiced in in any other county or state prison in the State of Massachusetts and should NOT be practiced here at BCHOC.

<u>MEMO OF LAW</u>
(CONTINUED)

<u>CODE OF MASSACHUSETTS REGULATIONS (CMR)</u>
<u>(FOR COUNTY CORRECTION FACILITIES)</u>

<u>103 CMR 926.04(5)</u>: <u>PROGRAM AND SERVICES FOR INMATES IN SEGREGATION</u>:

"Written Policy and Procedure shall provide that all inmates within Special Management Units, recieve a minimum of one hour a day of exercise, five days per week, out of their cells, unless security or safety considerations dictate otherwise. When weather permits, outside exercise shall be ~~[illegible]~~ included." See Regulatory Authority: <u>103 926.00 M.G.L. c. 124, §§(1),(d) and (g); c. 127, §§ 1A and 1B.</u>

<u>MASSACHUSETTS DEPARTMENT PUBLIC HEALTH</u>
<u>105 CMR 451.212</u>: <u>RECREATION OPPORTUNITIES.</u>

<u>(B)</u> "Each inmate in Special Management Units or disiplinary, shall be afforded not less than one hour per day, five days a week, of exercise and recreation opportunities, outside of his cell, and outdoor exercise, when weather permits."

Regulatory Authority: <u>105 CMR 451.000: M.G.L.</u>

c. 111 §§ 5, 20, AND 21; c. 270, §§ 21 AND 22; AND St. 1987 c. 759, § 4.

Plaintiff states that during November 15, 2004 through December 15, 2004, in "Unit-F", disiplinary segregation, he was deprived of exercise and was not allowed outside recreation time during each one-hour period and was required to shower while handcuffed "per policy" of the Barnstable County defendants. No other inmates were treated any differently. This has been "policy" "for years". (See enclosed affidavits C-1 through C-10)

Plaintiff states that no due process is afforded in defendants policy and is an "Across-the-Board Policy" as discussed in:

Thielman v. Leean cited 282 F. 3d 478:: March 4, 2002 (7th Cir. 2002)

"The state has deprived him (Thielman) of a liberty interest without an individualized determination as to (without) whether or not he poses a danger or escape risk. The state concedes that no individualized determination

is made; so we look at the predicate question of whether Thielman has a liberty interest in not being subjected to restraint policy." (see also): SHANGO V. JURICH 681 F.2d 1091, 1097 (7TH CIR. 1982)

Plaintiff states that no administrative review is afforded in Barnstable County Defendants Blanket-Policy, which is NOT THE CASE AT ANY OTHER COUNTY FACILITY, OR STATE PRISON.

In BRANHAM V. MEACHUM 77 F.3d 626, 628-9 (2nd Cir 1996) Branham argues that he was entitled to recieve a right to be free from unreasonable restraint, depriving him of a liberty interest without sufficient procedural due process". (Fourteenth Amend.)

Plaintiff states that Code of Mass. Regs. have force of law, therefore, he should be afforded a process in restraint policy where to be restrained is not part of the sentence he recieved in a court of law or on Barnstable County HOC Disiplinary Board as a sanction for the alleged violations, (such disiplinary procedure also has force of law).

In Branham v. Meachum, supra, court states once constitutional violations are found, we may reverse if we determine that relief ordered (or in Plaintiffs case, "restraints imposed") constitutes abuse of discretion. The court may use its broad discretion to fashion remedies.

Plaintiff states that his motion for Preliminary Injunction was intended, in good faith, to "fashion a remedy" but was denied, absent consideration of the plausable constitutional violations.

Plaintiff states that there is an immediate threat that defendants policy will continue to deprive segregation-unit inmates of their right to exercise, by being placed in "full-restraints" during such exercise period and that defendants will continue to shower inmates, including Plaintiff, in handcuffs while trying to wash his body.

As in Sierakowski 223 F. 3d at 444-5 (2000 decided), declaratory and injunctive relief,

under 42 USC § 1983, deprivation of rights.

In <u>Sandin v. Connor</u>, <u>Sandin</u> refocussed the inquiry on the "nature" of the deprivation at issue. The court held that "a state could not create a liberty interest" unless the right provided a freedom from restraint that "imposes atypical and significant hardship on the inmate in relation to ordinary incident of prison life."

Plaintiff asserts that BCHOC defendants blanket-policy affords no inmate in disciplinary segregation, a right to be free from restraints during exercise, or shower, which is <u>not</u> the "ordinary incidents", at any other county or state facility, in Massachusetts, of "prison life".

Plaintiff reasserts that he was deprived of exercise due to the application of "leg-irons" and "handcuffs" and deprived of free movement to shower properly. (Such requirement in a showering situation is not mere discomfort, or inconvenience, to an inmate, but is painful in the wrists while trying to reach body parts, and

is, inhumane, unnecessary, and punitive).

Plaintiffs status was the same as all other inmates and was never reviewed by an administrative classification board. (Such a process doesn't exist.)

This "across-the-board policy" is further discussed in <u>Thielman v. Leean</u>, which states, by the Seventh Circuit; "Across-the-board Policy, rather than an individualized decision; indeed the nature of a 'Blanket-Policy' is such that it removes the need for decisionmaking on a case-by-case basis." ..... "Policy does not have a rational basis for drawing distinctions with the regard to the use of restraints" (cited) <u>282 F.3d 478 March 4, 2002 (7th Cir. 2002)</u>.

Plaintiff admits that his status at the Barnstable County HOC may not rise to the level as the others, such as <u>Thielmans</u>; but more so, because the "House of Correction" is only a low-level facility, these practices of such Policy, by the defendants, are unheard of, and should not exist.

Plaintiff states that defendants created their restraint policy in bad faith, merely to make their jobs easier as discussed in THELMAN, with regard to "decision-making on a case-by-case basis." This practice, even if security or safety was an ingredient in such policy, has infringed upon the constitutionally protected rights afforded to incarcerated (temporarily) human beings.

Plaintiff states that the defendants have abused their discretionary powers at the expense of the inmates rights, Plaintiff included.

Plaintiff states that his claims are not "moot" because "he is no longer in disciplinary segregation". The defendants will only continue their practices on other low-level-crime inmates, as they have already done to Plaintiff, in violation of his rights under the U.S. Constitution 8th and 14th Amendments as well as 42 U.S.C. § 1983, and other state administrative laws which have force of law.

Therefore, the damage here certainly outweighs any harm to opposing parties and to the

public, and the "success on the merits" where plaintiffs rights have already been violated, are very likely.

In <u>Helling v. McKinney</u>, the court states that "Injunction certainly can be issued to protect inmates from unsafe conditions before injury occurs." <u>125 L. Ed. 2d 22 113 S.CT. 2475 61 U.S.L.W. 4648 U.S (June 1993).</u>

Plaintiff states that to try to obtain exercise while fully restrained in leg-irons and handcuffs, poses a significantly risk of injury as does being handcuffed while showering. If slip and fall occurs on wet-soap-filled-floor, one can not use free handmovement to avoid such a fall, which is common, even without being handcuffed.

Plaintiff states that defendants policy on restraints, unequivocally deprived plaintiff of exercise, which violated his rights under the Eighth Amendment and the Fourteenth Amendment and deprived him of one of "life's liberties".

In Griffin v. Smith the court held that conditions that might constitute infringements of civil rights of prisoners in a special housing unit, included (amongst others) "inadequate provision for exercise." (See) 493 F. Supp. 129 (W.D. N.Y. 1980) Griffin v. Smith.

Part 1: Constitutional Rights of Prisoners Vol. 2 c. 5. Isolated Confinement - "The Hole" and Administration Segregation § 5.3 Application of the Amendment (Eighth) [5.3.4] Punishment proportional to the offense describes the very "minimum necessities of food, water, sleep, exercise"....

Plaintiff contends that the defendants policy violates his substantive due process right to be free from unessessary restraints as described in Youngberg v. Romeo 457 U.S. 307 73 L. Ed. 2d 28 102 S. Ct. 2452 (1982) quoting Greenholtz v. Nebraska Penal Inmates 442 U.S. 7, 18, 60 L. Ed. 2d 668, 99 S. Ct. 2100 (1979).

"Procedural due process obliged to afford him some kind of hearing, either before or after

....." WHITLEY V. ALBERTS 89 L. Ed 2d 251, 475, U.S. 312.

"SUBSTANTIVE RIGHTS UNDER DUE PROCESS CLAUSE OF ELEVENTH (AND FOURTEENTH) AMENDMENT WERE INFRINGED BY PRISON OFFICIALS." YOUNGBERG V. ROMEO (1982) 457 U.S. 307, 309, 73 Ed 2d 28 1025, 1026, 2452.

"ABSENT PROOF OF INTENT TO PUNISH, WE NOTED THIS DETERMININATION GENERALLY will TURN ON WHETHER AN ALTERNATIVE PURPOSE TO which THE RESTRICTION MAY RATIONALLY BE CONNECTED, is ASSIGNABLE FOR IT, AND WHETHER IT APPEARS EXCESSIVE IN RELATION TO THE ALTERNATIVE ASSIGNED TO IT." (SEE) KENNEDY V. MENDOZA - MARTINEZ 312 US 1441, 168-9, 9 L. Ed. 2d 644, 83 S. Ct. 554 (1963).

Plaintiff STATES THAT UNLIKE KENNEDY, SUPRA, BCHOC Blanket - Policy AFFORDS NO(E) EXCEPTIONS AND OFFERS NO ALTERNATIVE, DESPITE SUCH Policy BEING UNHEARD OF, ANYWHERE ELSE IN COUNTY OR STATE FACILITIES, IN MASSACHUSETTS.

IN HEWITT V. HELMS 459 US 460 74-7 L. Ed. 2d 675, 103 S. Ct. 864 (1983), THE COURT

- had held that prison officials' "regulations could give rise to liberty interests if the language of the regulation contained "mandatory language" that an incursion of liberty would not occur absent substantive predicates" 471-472.

Plaintiff states that inasmuch as, supra, the BCHOC defendants restraint "Blanket-Policy" is "mandatory"-"Across-the-Board" and subjects every inmate to full restraints when such "one-hour" period is supposed to be for exercise, and the door on the shower stall is/was secured sufficiently, and is specifically designed so that one can put hands through to be uncuffed. Defendants just ignored the issue until plaintiff finally petitioned the state court.

Therefore, defendants have violated plaintiff rights under 42 USC § 1983 and the Eighth and Fourteenth Amendments as well as other state, federal laws. The court

MUST INTERVENE BY ORDERING A <u>TEMPORARY RESTRAINING ORDER</u>, IF NOT, A <u>PERMANENT</u> ONE, AT LEAST, UNTIL THIS COURT CASE IS DECIDED BY THE COURT, OR JURY TRIAL. THIS POLICY OF DEFENDANTS MUST BE REMEDIED, SO THAT SUCH VIOLATIONS WILL NOT CONTINUE, OR THAT NO INJURIES WILL OCCUR IN THE FUTURE.

"DISTRICT COURT ORDERS REFUSING TO GRANT PRELIMINARY INJUNCTIONS ARE APPEALABLE" UNDER 28 USC § 1292(A)(1), (OR 28 USC § 1291). (SEE) CHAPPELL + COMPANY V. FRANKEL (1966, CA 2 NY) 367 F.2d 197, 12 FR. SERV. 2d 1392.

PLAINTIFF HUMBLY RELIES ON THIS HONORABLE 'COURT OF APPEALS' TO REVERSE THE DISTRICT COURTS DECISION TO "DENY AS MOOT" IN FAVOR OF PLAINTIFF IN THIS ACTION, AND ORDER AND COMMAND THE DEFENDANTS TO DISCONTINUE SUCH POLICIES, REGARDING RESTRAINTS IN Disiplinary Segregation Units.

UNDER PAINS AND PENALTIES OF PERJURY-
DATED: July 14, 2005

RESPECTFULLY SUBMITTED,
Steven Dearborn
STEVEN DEARBORN, PRO SE.

# CERTIFICATE OF SERVICE

I, Plaintiff, Steven Dearborn pro se, do hereby certify that on this day, I served a true (and accurate to the best of my ability) copy of the within Plaintiff's Motion to Appeal for Preliminary Injunction - Temp. Res. Order - to the defendants, by mailing same, first class mail, postage prepaid, to: (via placing into unit mailbox B.C.H.O.C.)

Robert S. Troy
Attorneys at Law
90 Route 6A
Sandwich, MA
02563-1866

David J. Rentsch, Esq.
Comm. of Mass.
Executive Office Public Safety - Dept. of Corr. - Legal Division
70 Franklin St. Suite 600
Boston, MA
02110-1300

Under pains and penalties of perjury on this day;

Dated: July 14, 2005

[signature] pro se
#14676 (B.S.O.)
6000 Sheriffs Place
Bourne, MA
02532-9999

C. File